### Susie Hicks v. The State.

#### No. 7636. Decided March 28, 1923.

**1.—Murder—Accessory—Accomplice—Evidence—Bill of Exceptions—Presumption.**

A bill of exceptions should be made so full and certain in its statements as that, in and of itself, it will disclose all that is necessary to manifest the supposed error, and the bill before the Court does not measure

up to this requirement, and this court must presume that the ruling of the trial court with reference to testimony of the finding of a belt, etc., was correct, and such presumption must control in this instance.

### 2.—Same—Sufficiency of the Evidence.

Where defendant was charged as an accomplice in advising and commanding, etc., to murder the deceased, and the jury were warranted upon the evidence, notwithstanding defendant's denial of the truth of the criminative circumstances, against her in finding her guilty of such accomplice, the judgment must be affirmed.

Appeal from the District Court of Cass. Tried below before the Hon Hugh Carney.

Appeal from a conviction of an accomplice to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*C. C. Hines,* and *R. H. Harvey* for appellant.

*R. G. Storey,* Assistant Attorney General for the State.

HAWKINS, JUDGE.—The indictment charges by proper averments that Charlie Kingston murderd Sam Griffin, and that appellant had prior thereto advised, commanded and encouraged said Kingston to commit said offense, but was not present at the time of the killing Upon conviction appellant's punishment was assessed at five years in the penitentiary.

We do not regard it necessary to set out the evidence in detail. Sam Griffin's wife was appellant's daughter. Kingston was a widower. Enmity of a serious character existed between the two men. They were carrying guns for each other, and so notorious was the trouble it was generally expected a killing would result whenever a meeting took place. This condition of affairs arose over the alleged improper relations between Kingston and Griffin's wife; Griffin was apparently seeking to kill Kingston because of such relations, and Kingston to kill Griffin, so that he might marry Mrs. Griffin. The parties all lived in the same community, and so generally known was the feud that neighbors intervened to try and prevent the killing which had become imminent. In response to this appeal Griffin agreed to lay his gun aside and abandon the man hunt. Kingston, however, was not of the same mind. When approached by the parties who had gotten the assurance from Griffin, Kingston in effect replied that he did not want them to come to him with any more "peace proposals," and that he intended to kill Griffin if he "went to hell" for it. It was the theory of the State that appellant joined Kingston and Mrs. Griffin in their desire to get Griffin out of the way, and that a conspiracy was formed among the three looking to his removal. It was in evidence that on one occasion they "shook

hands'' upon the proposition that they would stand together until
Griffin was out of the way. It was also proven that a few months
before the killing Griffin and his family stayed for a time with his
brother-in-law, Minnis Bird; that appellant had told a witness she
advised Kingston how he could secret himself at a point near there
and kill Griffin as he left Bird's house. There is also evidence in the
record tending to show that appellant placed a lamp in a certain posi-
tion in the window to advise Kingston as to the movements of deceased.
When Griffin was killed he was shot in the back. The facts were
such the jury would have been warranted in finding that Kingston
had waylaid and assisnated him. A few months after the killing
Kingston and Mrs. Griffin were married.

There is no criticism of the court's charge. It appears to be a fair
presentation of the law. No special charges were requested. There
are only three bills of exception in the record, and they complain of
the admission of certain evidence. It was proven by the state that
after the killing both Kingston and Mrs. Griffin expressed their pur-
pose to marry. It was shown that appellant was present and heard
this conversation. It was an expressed intention on their part to
carry out the plan rendered possible by the killing of deceased.
Appellant being present when such conversation was had, we are
not aware of any rule of law rendering it inadmissible.

The state had proven that one night Mrs. Griffin and Kingston met
behind an outhouse, at which time Kingston lost a belt which when
found was sent to appellant who returned it to Kingston. A witness
testified over objection that she heard Mrs. Griffin say she met King-
ston at said place. This statement was made by one of the alleged
conspirators during the pendency of the conspiracy. (Branch's
Ann. P. C., Sec. 694, p. 352.) There appears to have been no con-
troversy about the meeting having taken place. A statement from
Kingston was introduced to the effect that while he and Mrs. Griffin
were at the place in question deceased approached, and that he
(Kingston) jerked his belt loose when he pulled his pistol intending
to kill deceased then if he came nearer. Mrs. Griffin's statement was
admissible. (See authorities collated under foregoing Section of
Branch). We note also that other testimony establishing the fact
of such meeting was in evidence, and under such circumstances the
admission of the hearsay statement of Mrs. Griffin would not present
reversible error, if not admissible on the other ground stated. Bill
of exception number two recites that:

''—while the witness for the State, Ella May Kingston, was tes-
tifying, on behalf of the State, the District Attorney was permitted
to prove, over the objection of the defendant, by said witness that
she told the defendant that she had heard that the defendant had
put a light out to give Kingston warning as to when the deceased left
the house, and that while witness and defendant were going down

the road near the place where Sam Griffin had killed Jim Kingston, witness asked defendant if it was true that she put the light there, whereupon defendant replied that she did, etc.

"Said testimony was objected to because same was immaterial, and further because it was another and different transaction (the killing of Jim Kingston having occurred several months prior to the date of the commission of the offense for which the defendant is now on trial."

A bill of exceptions should be made so full and certain in its statements as that, in and of itself, it will disclose all that is necessary to manifest the supposed error. (Branch's Ann. P. C., Sec. 206, page 131, and authorities cited thereunder.) The bill before us does not measure up to the requirement. Ella May Kingston was a daughter of Charley Kingston, the alleged principal in the instant homicide. We learn from the statement of facts that several months before Sam Griffin was killed by Charley Kingston, that Griffin had killed Jim Kingston. Appellant argues in his brief that the matter set out in the bill about putting "out the light" was with reference to warning Jim, and not Charley Kingston as to the movements of deceased, and had reference to the killing committed by Griffin, and not the one in which he was killed. The bill is approved with the following qualification:

"It was the theory of the State that a conspiracy existed between Charlie Kingston, Mrs. Leta Griffin (now Kingston) and the defendant to take the life of Sam Griffin, and this testimony was admitted on said theory, limited however by the charge of the Court on conspiracy."

Unless a bill of exception shows otherwise we are bound by the legal presumption that the ruling of the trial court was correct, and such presumption must control in this instance.

The jury were warranted from the evidence in reaching the conclusion they did, notwithstanding appellant's denial of the truth of the criminative circumstances against her. The issues of fact having been settled in favor of the State by the jury, and finding no errors in the record calling for a reversal, the judgment must be affirmed.

*Affirmed.*